**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ELEANOR MCKISSICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:09-cv-01112** |
| | ) | **Judge Nixon** |
| **v.** | ) | **Magistrate Judge Bryant** |
| | ) | |
| **ELECTROLUX HOME PRODUCTS, INC.,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Pending before the Court is Defendant Electrolux Home Products, Inc.'s Motion to Strike Declaration of Steve Trail[1] (Doc. No. 30) ("Motion to Strike"), filed along with a Memorandum in Support (Doc. No 31). Plaintiff Eleanor McKissick filed a Response in opposition to Defendant's Motion to Strike (Doc. No. 35), to which Defendant filed a Reply (Doc. No. 39). Subsequently, Magistrate Judge Bryant issued a Report and Recommendation (Doc. No. 45) ("Report") recommending that the Motion to Strike should be granted and that Steve Trail's Declaration should be stricken (*id.* at 1). Plaintiff then filed a Motion for Review of the Magistrate Judge's Report (Doc. No. 46) ("Motion for Review"), to which Defendant filed a Response (Doc. No. 47).

Also pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 18) ("Motion for Summary Judgment") and Memorandum in Support (Doc. No. 19). Plaintiff filed a Response in opposition to Defendant's Motion for Summary Judgment (Doc. No. 24), to which Defendant filed a Reply (Doc. No. 32).

---

[1] This Declaration, originally submitted by Plaintiff in support of her Response to Defendant's Motion for Summary Judgment, is docketed at No. 27-1.

1

Upon review of this matter, the Court finds Magistrate Judge Bryant's Report to be well-founded and **ADOPTS** it in its entirety. The Court thereby **GRANTS** Defendant's Motion to Strike. Furthermore, for the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

I.   B̲A̲C̲K̲G̲R̲O̲U̲N̲D̲[2]

Defendant is a manufacturer of gas and electric ranges in Springfield, Tennessee. On September 9, 2008, Defendant posted two job openings on Career Builder's website. Defendant sought applications for two tool maker positions. Tool makers produce and repair dies, which are machine parts that are used to manipulate metal for installation in specific products, including the ranges made at Defendant's facility. Tool makers must have strong analytical skills and a thorough understanding of the dies and the machines in which the dies are used. A machinist, by contrast, uses machine tools to create certain parts for dies based upon specifications that are provided to them by others. Tool makers are more skilled and perform more advanced work than machinists. Defendant's job posting for the tool maker positions listed a variety of qualifications and skills that would be required of applicants, including at least eight years of experience in tool and die, or having a journeyman card in tool and die.

On September 22, 2008, Plaintiff visited Defendant's facility and spoke with a Human Resources employee about both openings. Having been told that both positions remained available, Plaintiff submitted her resume, which she alleges indicated that she had more than thirteen years of experience of tool making (Doc. No. 1 ¶ 11). Plaintiff was not offered an

---

[2] Facts in this section are undisputed and taken from Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment (Doc. No. 25) and Defendant's Response to Plaintiff's Statement of Additional Facts (Doc. No. 34), unless otherwise noted.

interview for either of the two positions. Plaintiff visited Defendant's facility on or after October 6, 2008, and was told that she was not being considered for either position because she was "not qualified."

By the time Plaintiff had submitted her resume to Defendant, Mike Campbell, the Tooling Department Manager, had already selected eleven candidates to interview for the opening in his department. Campbell testified that he was looking for an individual who had significant tool and die experience, and stated that he chose not to interview Plaintiff for the opening because he had already selected eleven qualified candidates to interview, he believed that Plaintiff was not qualified for the position, and the eleven candidates he had already chosen for interviews were more qualified than Plaintiff. (Doc. No. 20-1 ¶ 14.) Campbell ultimately hired Shane Essary, who had fourteen years of experience in tool and die, including eight years of experience as a tool maker. Campbell testified that he determined that Essary had a more advanced level of experience than Plaintiff, since the type of work that Plaintiff had done in the past was comparable to that of a machinist, a position that requires less skill than a tool maker. (*Id.* ¶ 19.)

Dean Trott, the manager of the Welding Department, which also had a job opening, sought a candidate who had significant tool and die experience, especially die experience, due to the particular demands of his department. Trott testified that he did not interview or hire Plaintiff because her resume did not indicate to him that she had significant tool and die experience, her employment for the immediately preceding three and a half years was unrelated to tool and die, and because he determined that the other applicants to whom he did offer an interview were more qualified than Plaintiff. (Doc. No. 20-4 ¶ 6.) Trott offered the position to Herman Bohanan. Trott testified that he did so because Bohanan's resume indicated that he had

3

significant experience in tool and die, he had operated machinery similar to that used by Electrolux for eleven years, and because he had welding experience.  (*Id.* ¶ 9.)

Plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission.  (Doc. 1 ¶ 3.)  She received a notice of her right to sue on or about September 19, 2009 (*id.*), and filed this Title VII action, alleging that she was not offered an interview or hired because Defendant discriminates on the basis of sex (*id.* ¶¶ 19-20).

## II.    PLAINTIFF'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### A.  *Background*

As a part of her Response in opposition to Defendant's Motion for Summary Judgment, Plaintiff included the Declaration of Steve Trail.  (Doc. No. 27-1.)  Plaintiff seeks to introduce the Declaration as expert testimony in support of her claim that she was discriminated against by Defendant.  In doing so, Plaintiff states that Trail "has over thirty years of experience in machining and tool and die, as well as in hiring and supervision of tool and die makers."  (Doc. No. 24 at 12.)  Trail, Plaintiff notes, "states unequivocally that [Plaintiff's] resume reflects thirteen years of experience in tool and die, well beyond the eight years required by Electrolux." (*Id.*)

Defendant filed a Motion to Strike the Declaration.  (Doc. No. 30.)  Plaintiff subsequently filed a Response in opposition to the Motion to Strike (Doc. No. 35), to which Defendant filed a Reply (Doc. No. 39).  Magistrate Judge Bryant reviewed the Motion to Strike and issued a Report and Recommendation, recommending that the Court strike Trail's Declaration.  (Doc. No. 45.)  His Report provided a thorough analysis of Trail's Declaration and he determined that the Declaration fails to demonstrate that Trail is qualified as an expert witness and that Trail's

4

Declaration will not assist the trier of fact. (*Id.* at 7-9.) Plaintiff has filed a Motion for Review, urging the Court to not adopt Magistrate Judge Bryant's Report. (Doc. No. 46.) Defendant has filed a Response, arguing that the Report came to the proper conclusions that the Court should strike Trail's Declaration. (Doc. No. 47.)

As an initial matter, the Court notes that the parties appear to disagree as to the nature of Magistrate Judge Bryant's Report and the standard the Court should employ when reviewing it. Plaintiff treats the Report as a non-final Report and Recommendation that must be reviewed *de novo* by the Court. (*See* Doc. No. 46 at 9.) Defendant argues that the Report is a final order on a non-dispositive matter, requiring the Court to use a "clearly erroneous standard" and pay deference to the Magistrate Judge's findings. (Doc. No. 47 at 2.) The Court finds the distinction to be irrelevant because it agrees with Magistrate Judge Bryant's findings and recommendation to strike Trail's Declaration.

B. *Parties' Arguments*

Plaintiff's Motion for Review asserts that Trail was qualified to serve as an expert witness because he "has seen a lot more tool and die resumes than have the jurors." (Doc. No. 46 at 5.) Consequently, Plaintiff argues, Trail "can testify to the differences in treatment which Electrolux afforded to the male candidates on the one hand and Ms. McKissick on the other." (*Id.*) Plaintiff goes on to assert that Trail had sufficient facts on which to base his determination, noting that the Magistrate Judge failed to mention a third piece of information Trail considered, in addition to the job posting and applicants' resumes: "Electrolux's excuses for why the male candidates were interviewed and hired and Ms. McKissick was not." (*Id.* at 6.) Trail, Plaintiff argues, "*shows*, not just states, how Ms. McKissick was treated differently from similarly situated males." (*Id.* at 7.) Plaintiff's third argument is that Trail, in evaluating resumes, has not

5

substituted his own judgment for that of Defendant; rather, Plaintiff argues, Trail "has merely pointed out" some disparities between Defendant's alleged reasons for not interviewing Plaintiff and the apparent qualifications of other applicants.[3]  (*Id.* at 7-8.)  Finally, Plaintiff asserts that Trail's Declaration will assist the trier of fact because, due to his experience, he has obtained specialized knowledge that jurors would lack, including that certain terms on Plaintiff's resume satisfied the qualification in Defendant's job posting that applicants demonstrate "use of precision measuring instruments."  (*Id.* at 8.)

Defendant's Response argues that the Report was well-founded and that it should be accepted by the Court, which should enter an order granting Defendant's Motion to Strike.  (Doc. No. 47 at 2.)  As to Trail's qualifications, Defendant cites to Magistrate Judge Bryant's detailed analysis of Trail's experience, which, Defendant asserts, led to the proper conclusion that Trail had not laid the foundation to support his alleged qualifications as an expert witness.  (*Id.* at 4.)  Next, Defendant argues that the Report accurately noted that Trail's Declaration provided mere conclusory statements without any analysis.  (*Id.*)  Defendant states that the Declaration does not serve to refute Defendant's reasons for not hiring Plaintiff for two reasons.  First, Defendant states that Trail did not evaluate the applicants based on the needs of Defendant, factors that would have been clearly evident to Trail if he had read deposition transcripts and declarations in this case.  Second, Defendant notes that the two job openings were for positions in two different departments that were filled by two managers with different hiring criteria and different reasons for not interviewing or hiring Plaintiff.  (*Id.* at 5.)  Moreover, Defendant argues, Trail substitutes his judgment for that of Defendant, because the only purpose of his Declaration is to support "Plaintiff's argument that she was qualified for the positions in question."  (*Id.* at 6.)  Finally,

---

[3] Magistrate Judge Bryant did not address this in his Report.  Nevertheless, because both parties raise and dispute this issue in their filings, the Court will address the issue.

Defendant argues that Magistrate Judge Bryant's finding that Trail's Declaration will not assist the trier of fact is correct because Plaintiff overstates the level of detail contained in the Declaration and because the Declaration treats the issue of Plaintiff's qualifications as being obvious to everyone. (*Id.* at 6-7.)

   *C. Analysis*

   The Court agrees with Magistrate Judge Bryant's analysis and grants Defendant's Motion to Strike Trail's Declaration.

   Trail's Declaration, the substance of which is less than two pages in length (Doc. No. 27-1), provides no support for what are otherwise conclusory statements that would be evident to anyone who had access to the same documents, regardless of his or her experience in the tool and die field. Plaintiff's Motion for Review consistently overstates both the detail and conclusions contained in Trail's Declaration. Trail, in essence, merely recited certain portions of Plaintiff's and other applicants' resumes, and compared those pieces of information to Defendant's job posting. Plaintiff has not established that the trier of fact would be unable to also do such simple math and document comparisons.

   Neither can Plaintiff establish that Trail's effort to refute Defendant's reasons for not interviewing Plaintiff adds anything of value. Like the comparison of resumes, the trier of fact would be entirely capable of considering Defendant's reasons and, based on the documentary evidence, determining whether those reasons were legitimate or actually pretext for discriminatory treatment.

   Third, the Court agrees with Defendant that Trail improperly substituted his own judgment for that of Defendant's managers. By effectively stating that he would have

7

interviewed Plaintiff if presented the opportunity, Trail adds nothing to the record other than his personal opinion.

Finally, the Court agrees that Trail's Declaration will not assist the trier of fact. Magistrate Judge Bryant stated the issue succinctly when he wrote,

> The facts Mr. Trail relies upon are facially evident in the applicants' resumes and Electrolux's job posting. Mr. Trail presents Plaintiff's qualifications as being obvious, presumably to all. As a result, Mr. Trail's declaration actually supports the proposition that it will not assist the trier of fact, for "if everyone knows something, then we do not need an expert because the testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue."

(Doc. No. 45 at 9 (citations omitted).)

For the reasons stated above, the Court agrees with Magistrate Judge Bryant's Report and **ADOPTS** it in its entirety. The Court therefore **GRANTS** Defendant's Motion to Strike. The Court will not consider Trail's Declaration when evaluating the parties' arguments about Defendant's Motion for Summary Judgment.

## III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247-48. The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment. *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

B. *Title VII Legal Standard*

To establish a claim of sex discrimination under Title VII, a plaintiff must either provide direct evidence of intentional discrimination by the defendant or introduce circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Direct evidence is evidence that if believed, "requires the

9

conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," and "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (quotations omitted).

In the absence of direct evidence, a plaintiff must present circumstantial evidence through the burden-shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792 (1973); *see also Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007). Under the burden-shifting analysis, Plaintiff bears the initial burden to establish a prima facie case. To do so, Plaintiff must present evidence on all of the following elements: (1) she is a member of the protected class; (2) she applied for and was otherwise qualified for the position; (3) she was considered but not selected for the position; and (4) the position remained open or was given to a less qualified non-member of the protected class. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). By proving these elements, Plaintiff establishes "a rebuttable presumption of discrimination, and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). If Defendant meets this burden, Plaintiff must demonstrate, by a preponderance of the evidence, that the proffered reason was merely pretext for discrimination because it: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

As an initial matter, Defendant argues that Plaintiff's claim that she was not interviewed for the relevant positions does not constitute actionable sex discrimination.[4] (Doc. No. 19 at 6 n.2.) In its Reply, Defendant urges the Court to dismiss the claim because, it alleges, Plaintiff's Response did not dispute that the "failure to interview" claim is not actionable. (Doc. No. 32 at 1 n.1.) While Plaintiff failed to directly contest this assertion by Defendant, Plaintiff's Response did address both the interview and hiring aspects of her claim as part of one legal analysis. (Doc. No. 24.) Consequently, the Court will not treat the matter as undisputed. Because being selected for an interview would have necessarily preceded an employment offer in this case, the Court adopts Plaintiff's approach and will address Plaintiff's failure to hire claim by also analyzing Defendant's interview selection procedures.

### C. Plaintiff's Direct Evidence of Discrimination

First, the parties disagree as to whether Plaintiff has proffered direct evidence of discrimination in this case. Plaintiff argues that there are two pieces of direct evidence that support her claim. First, she points to the fact that Defendant has never employed a female tool maker (*id.* at 7-8), a fact that Defendant has admitted for the purposes of summary judgment (Doc. No. 32 at 2 n.2). Second, Plaintiff cites an incident from 2004, when she allegedly had a phone conversation with a male individual she believed to be the Tooling Department Manager for Defendant. (Doc. No. 24 at 8.) In response to her inquiry about a job opening as a tool

---

[4] In doing so, Defendant cites to the Court's decision in a prior case for the proposition that denial of an interview does not constitute an adverse employment action. *Jackson v. Electrolux Home Prods., Inc.*, No. 3:04-cv-00916, Doc. No. 110 at 9 (M.D. Tenn. Aug. 25, 2006) (docketed in the instant action at No. 32-1). While the Court will address the parties' arguments about both the interview and hiring selection, rendering Defendant's argument on this point irrelevant, the Court notes that is not convinced that the facts of *Jackson* and the instant case are analogous. In *Jackson*, the plaintiff had been denied an in-person interview subsequent to a telephone screening interview before he was denied a promotion, and brought claims against Defendant for both the failure to interview and to promote him. *Id.* at 8. Consequently, the Court treated the two claims as "simply different aspects of the same incident, and not independent adverse employment events." *Id.* at 9. Plaintiff, by contrast, was neither an internal candidate for hire nor was she provided a telephone interview as a screening mechanism, as was the case with the plaintiff in *Jackson. Id.* at 2.

maker, the individual allegedly said that "because [Plaintiff] was a woman[,] she probably would not be able to lift the heavier parts made and used at the facility." (*Id.*)

Defendant argues that Plaintiff is unable to establish a prima facie case using direct evidence because the two pieces of evidence proffered by Plaintiff do not meet the standard for direct evidence. In particular, Defendant focuses on the fact that direct evidence must "require[] the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions," leaving no room for inferences, and that it demonstrate an "actual discriminatory intent by a decision maker." (Doc. No. 32 at 2) (citations and quotations omitted). With respect to the historical lack of female tool makers, Defendant argues that such an imbalance in its workforce does not necessarily lead to the conclusion that Defendant considered Plaintiff's sex when it did not offer her an interview or position with the company. (*Id.* at 3.) Second, Defendant argues that the alleged remark from 2004 is irrelevant because neither Trott nor Campbell, the only two managers responsible for filling the open positions in question, made the remark or have knowledge of Plaintiff's past application for employment with Defendant. (*Id.* at 3-4.)

The Court agrees with Defendant that Plaintiff has not proffered any direct evidence in this case. Plaintiff's arguments about the historical gender disparity in tool maker positions and an alleged statement from one of Defendant's employees in 2004 do not "require the conclusion unlawful discrimination was at least a motivating factor" in Defendant's decision not to interview or hire Plaintiff because neither argument is directly tied to the incidents that form the basis of Plaintiff's claims in the instant case. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). As such, Plaintiff may only defeat Defendant's Motion for Summary Judgment by proceeding on a circumstantial evidence theory.

12

### D. Plaintiff's Circumstantial Evidence of Discrimination

Defendant does not contest that Plaintiff meets the first and third elements of the prima facie case: that she is a member of the protected class, and that she was considered for and denied the position. (Doc. No. 19 at 7.) Consequently, Defendant only argues that Plaintiff is unable to establish the second and fourth elements of the prima facie case: that she was qualified for the position, and that she had similar qualifications to the individuals who were selected for interview or for hire. (*Id.*)

### i. External Circumstantial Evidence of Discrimination

Plaintiff and Defendant also disagree as to whether the same two pieces of evidence Plaintiff argues can serve as direct evidence—that Defendant has not employed a female tool maker and the alleged remark made by an employee to Plaintiff when she applied for a job in 2004—can serve as circumstantial evidence of discrimination.

Plaintiff argues that "discriminatory remarks, even by a non-decision maker, can serve as probative evidence of pretext" because they "can add 'color' to the decision making process." (Doc. No. 24 at 9 (citing *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998).) Moreover, Plaintiff argues that "evidence of a discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events encompassed by the instant claim." (Doc. No. 24 at 9 (citing *Risch*, 581 F.3d at 393 (quotations omitted)).) Consequently, Plaintiff argues, both the alleged 2004 comments and hiring history constitute circumstantial evidence of discrimination in the instant case because they "add 'color' to the Electrolux decision making process, or may be indicative of a 'corporate state of mind' or a discriminatory atmosphere." (Doc. No. 24 at 10.)

Defendant, in its Reply, contests the use of the historical gender imbalance and alleged 2004 remark as circumstantial evidence of discrimination.  Defendant first argues that evidence that it has not employed a female tool maker cannot constitute evidence of discrimination because it is, in effect, an impermissible bottom-line analysis.  In making this argument, Defendant cites to *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006) (citations and quotations omitted), for the proposition that, "for statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination."  (Doc. No. 32 at 5.)  Defendant contends that Plaintiff has failed to provide such detailed statistics, and the mere fact that Defendant has not employed a female tool maker cannot serve as circumstantial evidence that it discriminated against Plaintiff in this case.  With respect to the alleged remark by one of its employees in 2004, Defendant argues that "one isolated and ambiguous comment, four years before the challenged employment, by an unknown declarant who played no role in the decisional process at issue is simply not circumstantial evidence of discrimination."  (*Id.* at 6.) In particular, Defendant takes issue with Plaintiff's categorization of *Ercegovich*, noting that, in that case, the Sixth Circuit stated that a reviewing court must consider the speaker's role in the employment decision, the substance of the remarks, and whether the remarks were isolated or ambiguous.  (*Id.* (citing *Ercegovich*, 154 F.3d at 355).)

The Court finds that the two pieces of evidence cannot be used as circumstantial evidence of discrimination.  First, Plaintiff has failed to provide any sort of statistical analysis or explanation whatsoever, as is required with numerical evidence about hiring practices in a discrimination case.  *See Amini*, 440 F.3d at 359 (quoting *Rocha v. Great Am. Ins. Co.*, 850 F.2d 1095, 1101 (6th Cir. 1988)).  All Plaintiff has done is put forth the fact that there have been no

female tool makers at Defendant's facility. Plaintiff has not provided any other information that would "'permit an inference of discrimination.'" *Id.* For example, Plaintiff could have provided statistics on how many job openings there have been for tool makers with Defendant in the past, how many women and men have applied for each of these job openings, how many male and female applicants were qualified for these openings, and similar statistics with respect to other companies in the region, among other pieces of information. Because Plaintiff has not provided any evidence that would "permit an inference of discrimination," the fact that Defendant has not employed a female tool maker in the past cannot be considered as circumstantial evidence.

Second, the alleged 2004 remark cannot serve as circumstantial evidence because it does not "establish[] the existence of a discriminatory atmosphere at [Defendant's] workplace." *Ercegovich*, 154 F.3d at 356. While it is clear that the Sixth Circuit does not consider "the comments of a nondecisionmaker [to be] categorically excludable," the alleged 2004 remark cited by Plaintiff is simply insufficient to "support the inference that the impermissible factor entered into the decisionmaking process in another context." *Id.* In this case, the comment— which, Plaintiff alleges to have been that "because she was a woman she probably would not be able to lift the heavier parts made and used at the facility, as those parts were heavier than those she was used to at" her previous place of employment (Doc. No. 24 at 8)—verges more toward a single individual's opinion rather than indicating any sort of "managerial attitude," "corporate state-of-mind" or "managerial policy." *Ercegovich*, 154 F.3d at 356. Consequently, the alleged 2004 remark cannot be considered as circumstantial evidence in this case.

### ii. *Plaintiff's Qualifications for the Position*

When deciding whether Plaintiff has put forth enough evidence to establish a genuine dispute as to her qualifications for the open positions, Defendant argues that the Court "'must

examine [Plaintiff's] qualifications as determined by the employer.'"  (Doc. No. 19 at 8 (quoting

*Lomax v. Sears Roebuck & Co.*, No. 99-6589, 2000 WL 1888715, at *4 (6th Cir. Dec. 19, 2000)

and citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 243 n.6 (6th Cir. 2005)).)

According to Defendant, Plaintiff cannot show that she was qualified under this standard.  Both

Campbell and Trott reviewed Plaintiff's resume for the openings in their respective departments

and individually determined that she was not qualified because, allegedly, her resume did not

indicate she had tool making experience (Campbell) or significant tool and die experience

(Trott).  (Doc. No. 19 at 8.)

  Plaintiff responds that she can establish a prima facie case of sex discrimination.  When

determining her qualifications, Plaintiff argues that Defendant should be bound by the

requirements Defendant listed in its job posting, and the "subjective evaluation of Plaintiff's, or

the male applicants' resumes" is irrelevant to this factor.  (Doc. No. 24 at 11.)  In doing so,

Plaintiff argues that both *Lomax* and *White* actually stand for the proposition that a court must

use "objective standards of the employer," such as the job posting, rather than considering

"subjective standards" such as Defendant's claims about Plaintiff's qualifications that run the

risk of conflating the second or fourth prongs of the prima facie case with a defendant's

opportunity to put forth a legitimate, non-discriminatory reason for its decision.  (*Id.*)  Plaintiff

then argues that, using the objective job posting as a standard, she was clearly qualified.  Plaintiff

alleges that her resume indicated that she had thirteen years of experience in tool and die, more

than the posted requirement of eight years, and had experience with blueprints and precision

measuring instruments, also listed as requirements in the job posting.  (*Id.* at 12.)

  Defendant's Reply asserts that Plaintiff has failed to show that she was qualified for the

job openings for tool makers.  As a threshold matter, Defendant does not contest that Plaintiff's

resume indicated that she had "used precision measuring instruments" and that she had "studied blueprints." (Doc. No. 32 at 7 n.3.) Defendant, therefore, only disputes Plaintiff's contention that she was qualified due to her experience in tool making. In doing so, Defendant argues that, under the law of this Circuit, it is not limited to the requirements it listed in its job posting. (*Id.* at 7 n.4.) In *Browning v. Dep't of Army*, for example, the Sixth Circuit stated that "employers are *not* rigidly bound by the language in a job description." 436 F.3d 692, 696 (6th Cir. 2006). Consequently, Defendant argues, it is Campbell and Trott's stated requirements for candidates that are the criteria that should be used in determining Plaintiff's qualifications. (Doc. No. 32 at 7.) Defendant alleges that neither Campbell nor Trott could "discern from Plaintiff's resume" that she had worked as a tool maker or had significant experience in tool and die, respectively. (*Id.* at 8.) Furthermore, Defendant notes that Plaintiff, during a deposition, was unable to "identify any description of work contained on her resume that required the higher level skills of a toolmaker as opposed to the lower level skills of a machinist." (*Id.*)

The Court finds that Plaintiff has failed to demonstrate that there is a genuine dispute as to her qualifications for the position, a showing that is required under the second prong of the *McDonnell Douglas* framework. *See White*, 429 F.3d at 240. While it is evident that Plaintiff and Defendant have a genuine disagreement as to whether Plaintiff's resume listed experience that clearly made her qualified for the job, such a difference of opinion is not enough to defeat summary judgment given the lens through which the Court must determine Plaintiff's qualifications.

The Court agrees with Defendant that it must consider Plaintiff's "qualifications as determined by the employer," making Campbell and Trott's alleged assessments of Plaintiff's qualifications relevant to this issue. (Doc. No. 19 at 8 (quoting *Lomax*, 2000 WL 1888715, at *4

17

and citing *White*, 429 F.3d at 243 n.6.))  While Plaintiff has argued that using Campbell and Trott's alleged assessments constitute an impermissible "subjective" standard, the Court does not agree with Plaintiff's interpretation of the Sixth Circuit's opinion in *White*.  In that case, the Sixth Circuit clearly demonstrated that it was concerned with evaluations of "subjective traits" such as "leadership or management skill."  *White*, 429 F.3d at 243 n.6.  "Leadership and management skill" are intangible qualities, which cannot easily be quantified and are left up to the subjective determination of a particular decision maker.  What Campbell and Trott were looking for here—experience in a given field or with particular types of instruments—is very different.  An individual either has or has not done a particular type of work; there is no gray area, as there may be when assessing an individual's capacity for "leadership."

Furthermore, the Court does not find that Campbell and Trott's stated requirements for filling the open positions in their departments were at all subjective.  It is true that these requirements set a slightly higher and different bar than the requirements listed in Defendant's job posting; however, as Defendant has noted, the Sixth Circuit has held that employers are not bound by the language in their job postings.  *Browning*, 436 F.3d at 696.  Campbell and Trott articulated relatively straightforward, objective preferences—ones that could easily be determined by looking solely at an applicant's resume or job application without subjective interpretation.  The fact that the requirements originated from two individuals who made the hiring decisions, rather than from a written document such as a job posting, does not in and of itself render those requirements "subjective."  In short, the Court will consider Trott and Campbell's requirements when evaluating whether Plaintiff was qualified for the job.

Considering Plaintiff's experience through the lens of Trott and Campbell's requirements, the Court finds that Plaintiff has not put forth sufficient evidence to establish that

18

there is a genuine dispute about whether she was qualified for the positions at Defendant's facility. Campbell was looking for an individual with significant tool making experience and Trott was looking for someone with significant tool and die experience—both objective qualifications. Defendant alleges that, looking at Plaintiff's resume, Trott and Campbell were not able to determine that Plaintiff had any such experience. (Doc. No. 32 at 8.) In fact, it is undisputed that Plaintiff, at her deposition, was unable to identify any aspect of her job duties while at Precision Products that required the higher level skills of a tool maker, rather than the lower level skills of a machinist. (Doc. No. 25 ¶¶ 25-26.) Thus, even by Plaintiff's own admissions, there was nothing on her resume that indicated she was qualified for the job in the Tooling Department.

Moreover, while Plaintiff asserts that "it is clear that" her resume shows she had thirteen years of experience in tool and die (Doc. No. 24 at 12), the Court, having reviewed a copy of the resume that Plaintiff submitted to Defendant, disagrees. In listing her "experience," Plaintiff includes a position as a "Machinist" with Precision Products of Tennessee for nearly thirteen years, with a detailed list of her job duties; she does not explicitly state that she has experience in tool and die. (Doc. No. 20-1 at 12.)

In sum, Plaintiff has not come forward with sufficient proof to establish that there is a genuine dispute as to whether she was qualified for the job openings with Defendant.

iii. *Similarity of Plaintiff's Qualifications to Those of Selected Candidates*

Defendant also argues that Plaintiff is unable to establish the fourth prong of the prima facie case, that she had similar qualifications to the selected candidates who were not a member of the protected class. With respect to the Tooling Department position, Defendant notes that Campbell testified that was looking to hire an individual who had "previous experience

19

performing the work of a tool maker," and did not consider candidates without such demonstrated experience for either interview or for hire. (Doc. No. 19 at 9.) According to Defendant, Essary, the individual whom Campbell selected for the position, "had fourteen years of experience in [t]ool [and] [d]ie, and eight years of experience performing the work of a tool maker in an identical position to the one Mr. Campbell needed to fill." (*Id.* at 9.) Defendant alleges that Plaintiff, by contrast, did not list any information indicating that she had performed the work of a tool maker. (*Id.*)

In addition, Defendant alleges that the eleven individuals whom Campbell decided to interview all submitted information that demonstrated they had experience working as tool makers. (*Id.* at 10-11.) With respect to one of the candidates, Robert Baggett, Defendant admits that Baggett's resume indicated he had worked as a machinist for ten years at Vought Aircraft, in addition to working for only two years as a tool maker. However, Defendant alleges that Campbell considered this experience with Vought Aircraft to be equivalent to the work performed by a tool maker because "he knew that employees classified as machinists at Vought typically performed tool making work and that Vought had a reputation for selecting only outstanding candidates for hire." (*Id.* at 10 n.3.) In sum, Defendant alleges that Plaintiff's qualifications were not similar to those of the eleven individuals Campbell chose to interview, who had "superior qualifications" than those of Plaintiff. (*Id.* at 11.)

Trott, who filled the opening in the Welding Department, sought a candidate who had significant tool and die experience, who had experience around welding operations, and preferred someone who had experience with die maintenance, hydraulic dies, and Programmable Logic Controllers ("PLC"). (*Id.* at 11.) Defendant alleges that Trott ultimately hired Bohanan because Trott determined that he had significant tool and die experience, he had used machinery

similar to that used by Defendant for eleven years, had experience maintaining dies, and had welding experience. (*Id.* at 12.) By contrast, Defendant alleges, Plaintiff's resume demonstrates no comparable experience in tool and die, any experience running machines like those used by Defendant, or any experience with welding operations. (*Id.*) Consequently, Defendant alleges that Bohanan had "superior experience and qualifications" as compared to Plaintiff. (*Id.*)

Defendant also argues that Plaintiff lacked similar qualifications to the individuals Trott chose to interview for the opening in his department. In addition to Bohanan, Trott interviewed Chad Lambert and one other individual. Defendant alleges that Trott offered Lambert an interview because Lambert submitted information indicating that he was a journeyman in tool and die, had worked as a tool maker for fifteen years, and had experience working with hydraulic dies and PLCs. (*Id.*) By contrast, Defendant alleges that Plaintiff did not indicate in her resume that she had such significant tool and die experience or experience with hydraulic dies or PLCs. (*Id.*) While Trott is unable to recall the name or exact qualifications of the third interviewee, Defendant alleges that Trott "chose that person because he had significant experience in [t]ool [and] [d]ie," which Plaintiff lacked. (*Id.* at 12-13.)

Plaintiff responds by noting her alleged qualifications—thirteen years of experience in tool and die and experience with blueprints and precision measuring instruments—and stating that such experience was "equal to or greater than all but four of [the] male candidates" who were offered interviews by Campbell or Trott. (Doc. No. 24 at 12.)[5]

Defendant's Reply reasserts that Plaintiff is unable to establish that she had similar qualifications to the selected candidates. According to Defendant, Plaintiff does not dispute that Essary was more qualified than Plaintiff. (Doc. No. 32 at 9-10.) Even assuming that Plaintiff

---

[5] Plaintiff's argument with respect to the fourth prong of her prima facie case relies on the Declaration of Steve Trail, which is now stricken from the record. Consequently, Plaintiff's remaining arguments are relatively sparse with respect to this issue.

did have thirteen years' experience in tool and die, Defendant argues, Essary was clearly more qualified than Plaintiff for the particular position. (*Id.* at 10.) In addition, Defendant notes that Plaintiff has not disputed that Bohanan had eleven years of experience working with similar machinery to the kind used by Defendant and had welding experience, whereas Plaintiff's resume allegedly did not indicate she had any such experience. (*Id.*)

Even if Plaintiff could come forth with proof sufficient to establish a genuine dispute as to the second prong of her prima facie case, the Court finds that Plaintiff is unable to demonstrate a genuine dispute as to the fourth prong of her prima facie case, that she was similarly qualified to the other job candidates. Defendant has provided thorough explanations of why Campbell or Trott deemed each candidate who received an interview qualified, pointing to specific language on or aspects of each individual's resume or job application. In doing so, Defendant held these other candidates to the same standards, articulated either by Campbell or Trott depending on the opening, as it held Plaintiff. The resume submitted by Plaintiff, as explained above, did not contain information leading Campbell or Trott to believe that she was qualified, let alone similarly qualified to the other candidates. As a result, Plaintiff has failed to come forward with sufficient proof to establish the fourth prong of her prima facie case, and there is no genuine dispute as to whether Plaintiff was similarly qualified to the other job applicants.

E.  *Defendant's Proffered Legitimate, Non-Discriminatory Reasons for Decision and Plaintiff's Pretext Evidence*

Defendant, in its Motion, asserts that even if Plaintiff has established a prima facie case of discrimination, it still has a legitimate, non-discriminatory reason for declining to interview or hire Plaintiff. With respect to the Tooling Department, Defendant notes that Campbell allegedly had three reasons for not interviewing or hiring Plaintiff: (1) he had already selected eleven qualified candidates to interview; (2) based on his many years of experience in tool making, he

did not believe that Plaintiff's resume indicated she was qualified for the position; and (3) he believed that the eleven individuals he had chosen to interview were more qualified than Plaintiff. (Doc. No. 19 at 13.) In particular, Defendant points out that Plaintiff's resume classified her prior employment as being in the position of "Machinist," and notes that Campbell allegedly considered the job duties Plaintiff listed on her resume to be more in accord with the duties of a machinist, rather than a tool maker, a position that even Plaintiff admitted requires a greater degree of skill than that of a machinist. (*Id.* at 14.) Furthermore, Defendant argues, Campbell allegedly chose candidates for interview and hire who were more qualified than Plaintiff, a fact that Defendant alleges is clear when looking at the experience each of the individuals listed on the resumes they submitted to Defendant. (*Id.* at 14-16.)

In terms of the Welding Department, Defendant notes that Trott alleged three reasons for not hiring or interviewing Plaintiff. First, Trott could not determine that Plaintiff would be a good tool maker based on the resume she had provided to Defendant, since it did not indicate that she had significant tool and die experience. Second, Plaintiff had spent the previous three and a half years performing work that was unrelated to tool and die. Finally, Trott determined that the individuals he had elected to interview were more qualified than Plaintiff. (*Id.* at 16.) Bohanan allegedly clearly indicated on his resume that he had experience working with machinery similar to that used by Defendant, maintaining dies and with welding, whereas Plaintiff did not indicate of these three types of experience on her resume. (*Id.*) Trott allegedly determined that Lambert was more qualified than Plaintiff due to the fact that he was a journeyman tool and die maker, he had fifteen years' experience as a tool maker, and had experience working with hydraulic dies and PLCs, machinery that Defendant uses in its

23

operations; by contrast, Defendant alleges that Plaintiff did not indicate any of these three things on her resume.  (*Id.* at 16-17.)

Finally, Defendant's Motion anticipates Plaintiff's Response and argues that she is unable to demonstrate pretext.  Defendant argues that what matters in the Title VII context is Defendant's perceptions of Plaintiff's qualifications.  (*Id.* at 18.)  In addition, Defendant notes that where there is little or no probative evidence of discrimination, Plaintiff must show that she was significantly more qualified than the successful applicants, which Plaintiff is unable to do in this case, as demonstrated by the previous analysis of Plaintiff's and other applicants' qualifications as listed on their resumes.  (*Id.* at 18-19.)

Plaintiff responds that she is able to show that Defendant's reasons are mere pretext for an otherwise discriminatory action.  According to Plaintiff, Defendant's two proffered explanations are "(1) that the Plaintiff was unqualified because she had *no* tool and die experience, and (2) that Plaintiff's most recent work experience was in fields having nothing to do with tool and die."  (Doc. No. 24 at 13.)  As to the first reason, Plaintiff asserts that she clearly meets the requirements that were in Defendant's job posting.  (*Id.* at 14.)  In addition, Plaintiff contends that she had more tool and die experience than all but four of the male applicants who were granted interviews and one of the individuals who was actually hired, with only one year experience less than the other individual who was hired.  (*Id.*)  Plaintiff alleges that one candidate, Howard Walker, listed no experience as a tool and die maker on his resume, thus reflecting that she and a similarly situated male applicant were afforded different treatment by Defendant.  (*Id.* at 15.)  With respect to the second reason, Plaintiff alleges that Defendant treated male applicants who had worked in other fields immediately prior to applying for a job with Defendant, including Bohanan, differently than Plaintiff.  (*Id.*)  Moreover, Plaintiff asserts

that Defendant's Motion continues this discriminatory treatment based on sex because Defendant discarded requirements or enhanced applicants' experience to justify having granted certain interviews. (*Id.* at 16.) Baggett, for example, was allegedly "given credit for machinist experience, precisely the 'experience' Defendant claims makes the Plaintiff 'unqualified.'" (*Id.*) Similarly, Plaintiff alleges that Lambert's resume indicated he had only four years of experience in tool and die, and Defendant's assertion that Lambert had fifteen years of experience "can only be arrived at by adding eleven years of experience as a 'product lab technician / *machinist* / fabricator'" to those four years. (*Id.*)

Defendant, in its Reply, first takes issue with Plaintiff's characterizations of Defendant's proffered legitimate, non-discriminatory reasons for its decision. In contrast to Plaintiff's description, Defendant notes that its Motion included three specific and detailed reasons alleged by both Campbell and Trott as to why they did not offer Plaintiff an interview (Doc. No. 32 at 11)—reasons that the Court has already detailed above.

Next, Defendant argues that Plaintiff has failed to show pretext. According to Defendant, Plaintiff's arguments on this matter are "that she was qualified for the position, she was more qualified than some of the persons chosen for interview or hire, and that some of the persons chosen were not qualified at all." (*Id.* at 12.) When a plaintiff makes an argument based almost solely on qualifications, Defendant argues, "the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation," and "to survive summary judgment[,] the applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." (*Id.* at 13 (citing *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir.

2006).) Plaintiff, Defendant argues, has failed to do this, and has instead merely sought to challenge the business judgment of Defendant. (Doc. No. 32 at 13.)

With respect to the Tooling Department position, Defendant summarizes Plaintiff's evidence of pretext in the following manner:

> [Plaintiff] was qualified for the position, she had more tool [and] die experience than four of the people chosen for interview and only one year less experience than the chosen candidate, Mr. Campbell interviewed other people who had not worked in the tool [and] die field for various periods of time prior to their application, and Robert Baggett was given credit for his machinist experience whereas she was not.

(*Id.* at 13-14.) As an initial matter, Defendant notes that Campbell did not list Plaintiff's absence from the field as being an alleged reason for not interviewing her, and thus dismisses it as irrelevant to the Tooling Department position. (*Id.* at 14.) Defendant then challenges Plaintiff's remaining arguments as mere efforts to substitute her judgment for that of Defendant, which is impermissible. (*Id.*) By contrast, the only perceptions about Plaintiff's qualifications that are relevant to the case are those of Defendant. (*Id.* at 16 (citations omitted).) Defendant notes that Plaintiff has not disputed that Essary or five of the candidates were qualified, and more qualified than Plaintiff, for the job. (*Id.*) In addition, Defendant explicitly lists the information contained in the resumes of the remaining four candidates whom Plaintiff contends were less experienced than her that demonstrates that the four men had years of experience as tool makers.[6] (*Id.* at 17-18.)

---

[6] In doing so, Defendant clarifies that while one of these men, Howard Walker, did not explicitly list "tool maker" on his resume, Campbell allegedly believed that listing "18 Years" of "Experience," while applying for a job as a tool maker, meant that Walker had experience as a tool maker. (Doc. No. 32 at 17.) Additionally, based on his knowledge about the work performed by "machinists" at Vought Aircraft, Campbell allegedly determined that Robert Baggett would have completed work of a tool maker while working as a "machinist" at Vought for ten years. (*Id.*)

As to the Welding Department, Defendant summarizes Plaintiff's arguments as being that (1) she allegedly had more experience than Bohanan, who was hired for the position; (2) Lambert had not worked in a related field for eleven years unless his years of overlapping experience count for that determination; and (3) Bohanan had not worked in any field for six months before being hired, and had been fired from his previous job for not coming in.  (*Id.* at 19.)  With respect to the first issue, Defendant again contends that Plaintiff's assessment of who had more experience is irrelevant, because it is Trott's perception, as head of the Welding Department, that matters.  (*Id.*)  Second, Defendant notes that Plaintiff has ignored the fact that Trott chose to interview Lambert even though Lambert had less experience than Bohanan, and that Bohanan was chosen because of his welding experience.  (*Id.* at 19-20.)  In addition, Defendant notes that Lambert should even be qualified under Plaintiff's argument that only the job posting be used to determine applicants' qualifications, as Lambert was a journeyman tool and die maker, and alleges that Lambert's resume indicated that he had performed the duties of a tool maker while employed in multiple capacities at his prior place of employment, which Plaintiff's resume did not do.  (*Id.* at 20.)  Finally, Defendant dismisses Plaintiff's argument about Bohanan's period of unemployment as irrelevant on the grounds that Trott never claimed that Plaintiff was not chosen for an interview because she had been fired from a previous job, and this was allegedly not a fact that "bothered" Trott when considering applicants for his department.  (*Id.* at 20-21.)

Even if Plaintiff were able to come forth with sufficient proof to establish a genuine dispute as to her prima facie case, the Court finds that Defendant has demonstrated that—and Plaintiff has failed to rebut with sufficient evidence—there is no genuine dispute as to its proffered legitimate, non-discriminatory reasons for failing to interview or hire Plaintiff.

While Defendant notes that Campbell and Trott each alleged three specific reasons for deciding not to interview Plaintiff, all of the reasons relate to Plaintiff's listed qualifications and the qualifications of other candidates. (Doc. No. 19 at 13-17.) Plaintiff's pretext theories similarly focus on her qualifications; she argues that she has met the requirements in the job posting, she has more experience than all but a few of the candidates, and Defendant essentially granted some leeway in terms of qualifications to male applicants but not to her. (Doc. No. 24 at 14-16.) As Defendant noted in its filings, when a plaintiff in an employment discrimination case makes a pretext argument that is based almost entirely on qualifications, the Sixth Circuit has stated that, "to survive summary judgment[,] the applicant's qualifications must be so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Bender*, 455 F.3d at 627. When a plaintiff can make such a showing, "the factfinder can legitimately infer that the employer consciously selected a less qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Id.* (citations and quotations omitted).

Held to this standard, the Court cannot say that Plaintiff has established a genuine dispute about whether Defendant's proffered reasons for not interviewing or hiring her are merely pretext for discrimination based on sex. Even if a jury could find that Plaintiff met Defendant's stated qualifications for the openings—using either the job posting or Campbell and Trott's requirements—Plaintiff cannot show that there is a genuine dispute as to whether her qualifications were "significantly better" than those of the other candidates. As Defendant notes, Plaintiff has not contested that the majority of the candidates were more qualified than she was for the Tooling Department opening. (Doc. No. 32 at 16.)

28

Moreover, Defendant alleges that the four candidates whom Plaintiff alleges to be less qualified than she is—Walker, Stan Ashburn, John Predovic, and Baggett—all have comparable or greater experience than Plaintiff. (*Id.* at 17-18.) The Court has examined the resumes of the four men in question and finds their level of experience to be evident from the documents themselves: Walker lists eighteen years when required to give his "Experience" for the position being filled (Doc. No. 20-1 at 21); Ashburn lists extensive experience in manufacturing over the course of more than thirty years, including work as a tool maker for three years and two years in die repair (*id.* at 25-28); Predovic lists years of experience as a tool maker (*id.* at 31-32), including five years working at Frigidaire Co., which Campbell testified is now Electrolux (*id.* at 7 ¶ 25); and Baggett listed experience as a tool maker and a machinist, including ten years with Vought Aircraft (*id.* at 40-41), a company that Campbell testified has its "'machinists' . . . perform[] tool making work" (*id.* at 9 ¶30).

With respect to the candidates Trott interviewed, the Court has reviewed the information they submitted to Defendant and determined that Bohanan listed eleven years of experience working as a die maintenance technician and with welding. (Doc. No. 20-4 at 9.) Moreover, Trott testified that Bohanan's resume included job descriptions indicating that he had worked with "machinery similar to Electrolux's." (*Id.* at 3-4 ¶ 9.) Lambert's resume included information that he had worked as a journeyman tool and die maker for two years and had worked as a "machinist" for eleven years. (*Id.* at 8.) His experience as a "machinist" included designing, making and setting up test fixtures for new product designs and work with PLC (*id.*), job duties that Defendant alleges indicated to Trott that he had done tool making work (Doc. No. 32 at 20). Based on this information, a reasonable jury could not find that Plaintiff's alleged

29

thirteen years of experience is "significantly better" than any of these other candidates' levels of experience.

Plaintiff also alleges that Defendant loosened some of its qualifications for male candidates when it did not do so for her. The Court does not find this to be the case, since Defendant has given detailed explanations as to why its managers determined that specific pieces of information submitted by the male applicants—including information submitted by Baggett, Ashburn, Predovic, Walker, and Lambert, all of whom Plaintiff argues are less qualified for the job than she is—met their stated qualifications. Plaintiff, by contrast, did not provide any information on her resume that indicated that her experience as a "Machinist" was more akin to the work done by a tool maker, a fact that Plaintiff herself has admitted.

Moreover, Plaintiff appears to want to have it both ways on this issue: on the one hand, she argues that she is "clearly qualified" for the two job openings based on the information contained in her resume alone, but at the same time argues that she should be granted some leeway by Defendant when interpreting her resume, as she alleges occurred with some of the male applicants. She is thus implicitly asserting that she is qualified and unqualified at the same time, a tactic that undercuts her arguments altogether. Plaintiff cannot have it both ways, and has failed to demonstrate that Defendant's reasons for not interviewing or hiring her are anything other than legitimate.

Plaintiff has thus failed to put forth enough proof to create a genuine dispute as to a material fact with respect to her prima facie case of discrimination and Defendant's legitimate, non-discriminatory reasons for not interviewing or hiring her. Defendant's Motion for Summary Judgment is therefore **GRANTED**.

**IV.** **CONCLUSION**

In light of the above analysis, the Court **ADOPTS** Magistrate Judge Bryant's Report and Recommendation and **GRANTS** Defendant's Motion to Strike the Declaration of Steve Trail. The Court also **GRANTS** Defendant's Motion for Summary Judgment. Accordingly, Plaintiff's claims against Defendant are **DISMISSED**.

It is so ORDERED.

Entered this the _____28th_____ day of September, 2011.

_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT